UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRAD WALTERS,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:10-cv-05394-RBL-KLS

REPORT AND RECOMMENDATION

Noted for April 8, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below defendant's decision be reversed and that this matter be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On January 5, 2006, plaintiff filed an application for disability insurance and another one for SSI benefits, alleging disability as of March 19, 2004, due to problems stemming from his diabetes. <u>See</u> Tr. 11, 122, 127, 151. Both his applications were denied on initial administrative

REPORT AND RECOMMENDATION - 1

review and upon reconsideration. See Tr. 11, 73, 82, 85, 88. A hearing was held before an administrative law judge ("ALJ") on July 3, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 23-62.

On August 26, 2008, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 11-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 29, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981, § 416.1481. On June 4, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on August 11, 2010. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred in failing to find plaintiff's mental health impairments and peripheral neuropathy in his hands to be severe impairments at step two of the sequential disability evaluation process.[1] The undersigned agrees that the ALJ erred in his step two evaluation and therefore in finding him to be not disabled. Accordingly, for the reasons set forth below, the undersigned recommends that the ALJ's decision be reversed, and that this matter be remanded to defendant for an award of benefits.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

REPORT AND RECOMMENDATION - 3

A.     Plaintiff's Mental Health Impairments

In this case, the ALJ found in relevant part at step two as follows:

> As to mental conditions, the claimant alleges depression. In February 2004, a consultative mental examiner, James Reuther, M.D., diagnosed a major depressive disorder secondary to the claimant's marital divorce. Dr. Reuther stated that the claimant's ability to interact with supervisors, co-workers, and the public would be impacted by his depression and irritability and that it was unlikely that he would be able to handle much interaction on a day to day basis. At the time, the claimant sought no active psychiatric treatment. Thereafter, the State agency [non-examining, consultative psychologist, John Robinson, Psy.D.,] found that the claimant had moderate difficulties maintaining social functioning, but only mild restrictions in activities of daily living, mild difficulties maintaining concentration, persistence, and pace, and no episodes of decompensation (Exhibit 6F). The moderate social limitation rested on the claimant's reports of depression and anger stemming from his divorce. Also in 2004, Barbara Dahl, Ph.D., noted moderate cognitive and social limitations (Exhibit 7F). The claimant also reported depression stemming from his girlfriend's death in 2005. In 2007, examining psychologist, Kristi Breen, Ph.D., indicated that the claimant had moderate to severe cognitive and social limitations (Exhibit l8F). Little weight is given to the findings by Dr. Reuther, [Dr. Johnson], Dr. Dahl, and Dr. Breen. Dr. Reuther, Dr. Dahl, and Dr. Breen's respective findings rest largely on the claimant's self-report as both examiners only met with the claimant one time. Reliance on the claimant's allegations weakens the persuasiveness of the examiners' findings as there are significant credibility concerns, which are discussed thoroughly below. Moreover, the above findings are inconsistent with the longitudinal history of treatment. While the records revealed that the claimant sought medical care for his diabetic condition, he did not seek any formal mental health treatment, such as counseling. Medical records showed very brief mention of mental health treatment, which consisted only of sporadic prescriptions for antidepressants (Exhibits 10F.33, l7F.7, 22F.6, 10, 12). Therefore, little weight is given to the above findings by Dr. Reuther, [Dr. Johnson], Dr. Dahl, and Dr. Breen. I find the claimant's depression to be non-severe.
>
> It is also noted that Dr. Reuther and Dr. Dahl diagnosed a personality disorder and each listed a form of substance abuse (i.e. alcohol and amphetamine). While there is periodic mention of the claimant smoking marijuana and consuming alcohol, the overall medical evidence of record does not establish ongoing substance abuse. Additionally, there was no further mention of a personality disorder in the record. Accordingly, I find these conditions to be non-severe.

Tr. 14. Plaintiff argues the ALJ's stated bases for discounting the opinions of the above medical

REPORT AND RECOMMENDATION - 4

opinion sources are not legitimate. The undersigned agrees.

First, the mere fact that Dr. Reuther, Dr. Dahl and Dr. Breen only met with plaintiff one time prior to issuing their evaluation reports, alone is not a valid reason for rejecting the findings and opinions contained therein.[2] The ALJ must give "clear and convincing" reasons for rejecting the un-contradicted opinion of a treating or examining physician. Lester, 81 F.3d at 830. Even when a treating or examining physician's opinion is contradicted, it "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. Thus, the opinion of an examining physician – which, by definition, ordinarily means one provided by a physician who has seen the claimant at most one or two times – may, by itself, constitute significant probative evidence the ALJ is required to consider and give proper reasons for rejecting. See Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (ALJ must only explain why significant probative evidence has been rejected); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984). Indeed, defendant often has based non-disability decisions on such one-time evaluations.

Second, it is true that the opinion of a physician premised primarily or to a large extent on a claimant's subjective complaints may be discounted where the evidence in the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). On the other hand, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [physician] does

---

[2] The opinion of a non-examining medical source like Dr. Johnson, furthermore, can constitute substantial evidence if "it is consistent with other independent evidence in the record," such as, for example, the findings and opinions of Drs. Reuther, Dahl and Breen. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

REPORT AND RECOMMENDATION - 5

not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (noting nothing in record suggested examining physician in that case relied on claimant's description of her symptoms more heavily than his own clinical observations).

Here, there is nothing in the evaluation reports issued by Drs. Reuther, Dahl or Breen to indicate they questioned plaintiff's credibility. See Tr. 233-38, 263-66,[3] 379-84. Nor do any of those reports establish Dr. Reuther, Dr. Dahl or Dr. Breen relied primarily or to a large extent on the self-reporting of plaintiff. Indeed, each of the three medical opinion sources also appear to have provided their own personal observations of plaintiff in their clinical findings, as well as to have conducted a mental status examination of him and/or performed psychological testing at the time.[4] See Tr. 234-36, 264-65, 380-84; see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim, clinical data may consist of diagnoses and observations of professionals trained psychopathology); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury).

Nor does the undersigned find the ALJ's third stated reason for discounting the findings

---

[3] Defendant states Dr. Dahl observed that psychological testing results suggested plaintiff was possibly exaggerating negative symptoms. See ECF #15, p. 10. But defendant fails to note that immediately after making that observation, Dr. Dahl went on to note those results actually might "be a cry for help." Tr. 265. The testing results thus do not clearly show Dr. Dahl believed plaintiff in fact lacked credibility regarding his mental health problems, as opposed to them being a mere "cry for help."

[4] In addition, it appears Dr. Johnson based his findings and opinions not just on plaintiff's self-reporting, but on the record as a whole as well, including the mental status examinations contained therein. See Tr. 245-57, 259-61; see also Lester v. Chater, 81 F.3d at 830-31 (non-examining medical source opinion can constitute substantial evidence if consistent with other independent evidence in record); Tonapetyan, 242 F.3d at 1149.

REPORT AND RECOMMENDATION - 6

and opinions of Drs. Reuther, Dahl and Breen to be valid.  Lack of "formal medical treatment" and evidence of only "sporadic prescriptions for antidepressants" may cast doubt on a claimant's credibility. See Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure of claimant to request serious medical treatment for supposedly excruciating pain).  It is not clear, however, how the lack of such treatment here calls into question the objective findings provided by the above medical sources.  Just because mental health treatment has not – or not yet been – sought by a claimant, does not alone mean the examining medical source's determination is suspect.  In this case, furthermore, there is at least some evidence plaintiff may have had a good reason for not obtaining more serious mental health treatment that the ALJ did not discuss. See Tr. 237 ("[Plaintiff] does not have access to psychiatric care [or] any sort of counseling."); see also Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (improper to discount claimant's credibility on basis of failure to pursue treatment when there is good reason for not doing so, such as lack of insurance); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it); SSR 96-7p, 1996 WL 374186 *7 (ALJ must not draw inferences about claimant's symptoms and their functional effects from failure to seek treatment, without first considering any explanations therefor).

Lastly, while it may be that the record fails to establish ongoing substance abuse, which would call into question any limitations assessed by Dr. Reuther and Dr. Dahl on the basis of that disorder, the mere fact that other medical sources have not diagnosed a personality disorder does not necessarily mean Drs. Reuther and Dahl failed to adequately support their diagnoses thereof in their evaluation reports.  Indeed, because as discussed above none of the other reasons the ALJ gave for discounting the findings and opinions of Dr. Reuther and Dr. Dahl were valid, it cannot

REPORT AND RECOMMENDATION - 7

be said for certain that the ALJ properly considered such support.

B.     Peripheral Neuropathy in Plaintiff's Hands

With respect to plaintiff's alleged peripheral neuropathy in his hands, the ALJ found in relevant part that:

> The claimant alleges ongoing pain symptoms, tingling, and numbness in his hands.  A 2006 consultative physical evaluation by examining physician, Laszlo Sztonak, M.D., indicated that the claimant exhibited diminished pinprick vibration and touch sensation in the fingers, but that he demonstrated 5/5 motor strength in the upper extremities.  Further, Dr. Sztonak found that the claimant was capable of lifting 100 pounds, which the claimant admitted he was capable of performing to the doctor.  Dr. Sztonak found no manipulative limitations (Exhibit 11F).  While a November 2007 physical evaluation revealed positive grip strength bilaterally (Exhibit 21F.5), a December 2007 electrodiagnostic report indicated that the claimant has only mild carpal tunnel syndrome bilaterally.  Tinsel's sign at the wrist and Phalen's sign were negative bilaterally.  Motor strength is 5/5 in the upper extremities except distal hand strength was 4/5 (Exhibit 23F).  Upon reviewing the EMG results in 2008, Dr. Hassan diagnosed peripheral neuropathy and left cubital tunnel syndrome.  On examination, Tinel's sign over the ulnar nerve at the right elbow was negative and was positive on the left.  There was no evidence of swelling or muscle wasting in either hand.  The claimant demonstrated a full range of motion of both wrists and all digits (Exhibit 25F).  Given the overall evidence, I find these conditions to be non-severe.

Tr. 14.  Plaintiff argues the ALJ erred in finding the peripheral neuropathy in his hands to be a non-severe impairment, because he did not provide clear and convincing reasons for discounting plaintiff's testimony regarding his ability to use his hands and feel objects.  In so arguing, plaintiff appears to be claiming that the ALJ was required to find a clear and convincing reason that is specific to each individual complaint or alleged disabling condition.  But the undersigned finds the law that governs the ALJ's credibility determination is not so strict.

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

REPORT AND RECOMMENDATION - 8

based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Accordingly, while the reasons for discounting a claimant's credibility must be specific and cogent – and where there is no affirmative evidence of malingering, clear and convincing – and the ALJ must identify that testimony or those statements he or she finds to be not credible along with the evidence that undermines the credibility thereof, there is no actual requirement that the ALJ link each claim made by a claimant to a stated reason for finding it incredible.  This is supported by the fact that the Ninth Circuit, as just noted, has recognized that in discounting credibility, the ALJ may consider as well "ordinary techniques of credibility evaluation" such as

REPORT AND RECOMMENDATION - 9

a claimant's general reputation for lying. Smolen, 80 F.3d at 1284.[5]  Here, the ALJ did give clear and convincing reasons for finding plaintiff lacked credibility overall regarding his allegations of inability to work when he found as follows:

> The claimant reported that he engages in activities that are inconsistent with allegations of disabling symptoms. For instance, in a Function Report to the Social Security Administration, the claimant stated that "I'm very serious about my workouts. It is my goal to feel the burning pain, sweat. Love being sore, lean, toned". The claimant indicated that when he has a gym membership he goes three times a week. He also reported that he regularly walks in the park (Exhibit 6E). Additionally, at the hearing, the claimant testified that he could not perform sedentary work because he could not remain seated for a long period of time. Yet, during a consultative physical evaluation, the claimant reported that he can sit without restriction. Also, contrary to allegations of disabling symptoms from neuropathy, the claimant reported that he can ascend and descend without limitation, drive without limitation, lift 100 pounds, and bend and crouch without limitation. He also reported that he can do housekeeping without limitation (Exhibit 11F). One would not expect such admissions from an individual alleging disabling symptoms. Such statements put the claimant's allegations into question.
>
> Additionally, multiple instances of non-compliance with treatment raise another credibility concern. For example, despite his diabetic condition, in December 2003, the claimant reported a diet consisting of beer, chips, and skittles (Exhibit 10F.14). A January 2005 treatment record by Dr. [Manuel P.] Posada[s, M.D.,] indicated that the claimant was not compliant (Exhibit 10F.33). 2007 medical records showed that the claimant did not comply with the insulin changes made by his treating provider. Treating nurse, [Mary E.]

---

[5] Even if plaintiff is correct (and although the ALJ's credibility assessment may have some impact on the step two severity determination, at least to the extent discussed above that the assessment affects the weight the ALJ gives to medical opinions based primarily on a claimant's subjective complaints), and while the ALJ must take into account a claimant's pain and other symptoms at step two (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.* If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28, 1985 WL 56856 *4 (emphasis added).

REPORT AND RECOMMENDATION - 10

Bates[, A.R.N.P.,] reported that the claimant was inconsistent with taking his insulin, but noted that when he does take the insulin as prescribed, he does well (Exhibit 21F.2-3). Another treating provider also noted compliance problems (Exhibit 22F. 8-9).

The overall objective medical evidence does not support the claimant's allegations of more limiting symptoms. In January 2004, the claimant underwent EMG/Nerve conduction studies of the claimant['s] lower limbs. The neurological review of systems was unremarkable. On examination, sensation to pinprick was slightly decreased in the feet. Motor examinations were at 4/5 in the lower limbs. The muscle tone and coordination were within normal range. The deep tendon reflexes were equal and symmetrical in the lower limbs. Straight leg raising tests were negative. Examining physician, Joseph Sueno, M.D., reported that EMG findings revealed signs of demyelination suggestive of peripheral neuropathy. There were no signs of lumbosacral radiculopathy. The muscles sampled did not reveal any abnormalities (Exhibit 10F.2-13). Such evidence does not support finding a lesser residual functional capacity than sedentary.

Moreover, treatment records and examination findings do not reveal significant findings to corroborate the claimant's allegations. For instance, a 2004 physical evaluation by primary care provider, Manuel Posadas, M.D., indicated that the claimant experienced fatigue and had sensory deficits in the feet. However, overall 2004 to 2006 treatment notes only revealed routine diabetic check-ups and medication re-fills (Exhibit 10F). Additionally, during a consultative physical evaluation in March 2006, Laszlo Sztonak, M.D., found the claimant to be in no acute distress. Romberg was absent and lower extremity coordination was within normal limits. Dr. Sztonak rated the claimant's lower extremities motor strength 5/5. The doctor assessed diabetic neuropathy involving lower leg, feet, and toes. Dr. Sztonak found that the claimant was capable of standing and walking 4 to 5 hours cumulatively in an 8 hour day and capable of sitting without restriction, capable of lifting 100 pounds, and that the claimant had no limitations on bending, crouching, and squatting (Exhibit 11F). In November 2007, treating nurse, Mary Bates, ARNP, reported that the claimant had decreased sensation in the lower extremities. Suboptimal diabetic control was noted. Ms. Bates advised changes to the claimant's insulin regimen (Exhibit 21F.5). During a subsequent visit that same month, the claimant reported that he was overall feeling well. Ms. Bates noted that the claimant was in no acute distress and that he exhibited a normal gait (Exhibit 21F). Apart from the claimant's subjective complaints, treatment notes between 2007 and 2008 from Community Health Care, as well as, Tacoma Foot and Ankle Clinic do not reveal significant clinical findings (Exhibits 22F and 24F). While the claimant was prescribed Vicodin and therapeutic shoes (Exhibit 24F), treatment notes do not support finding a lesser residual functional capacity than sedentary.

REPORT AND RECOMMENDATION - 11

> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet, a review of the record revealed no restrictions recommended by treating providers.

Tr. 16-17. Given that plaintiff has alleged disability based either primarily or solely on physical impairments, the ALJ did not err in discounting his credibility here, as these reasons are all valid. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding discounting of claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not following prescribed course of treatment can cast doubt on the sincerity of the claimant's pain testimony); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); Smolen, 80 F.3d at 1284 (to determine whether claimant's symptom testimony is credible, ALJ may consider his or her daily activities); Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (finding that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement).

That being said, the undersigned does find, as plaintiff goes on to argue, that the medical evidence in the record indicates the existence of at least some more than *de minimis* work-related limitations stemming from peripheral neuropathy in his hands, which the ALJ did not appear to, or at least appear properly to, consider. For example, the ALJ did not discuss or give any reason for rejecting the moderate limitations on handling, carrying, pushing and pulling assessed by Dr. Posada,[6] or those assessed by M. Rene Speilmann, A.R.N.P.,[7] in the same functional categories.

---

[6] Defendant sets forth a number of reasons why the ALJ did not have to adopt the assessments of Dr. Posada. See ECF #15, pp. 6-7. Although these reasons certainly may be valid, the ALJ did not provide them in his decision as a basis for rejecting Dr. Posada's assessments. Accordingly, they cannot be considered here. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss).

REPORT AND RECOMMENDATION - 12

See Tr. 307, 317, 364, 374. Thus, while there is other medical opinion source evidence, such as that from Dr. Sztonak and Alfred Dickson, M.D., a non-examining physician, indicating plaintiff has no or only mild limitations in the use of his hands as noted by the ALJ (see Tr. 14, 17, 346, 350), it is not clear whether the ALJ actually considered all the relevant medical opinion source evidence in the record on this issue, or whether the step two determination is in fact supported by substantial evidence.

II.     The ALJ's Disability Determination

Defendant argues that any errors committed by the ALJ here were harmless. But an error is harmless only if it is non-prejudicial to the claimant or if it is irrelevant or inconsequential to the "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The undersigned disagrees that the errors the ALJ committed in this case are irrelevant or inconsequential to the ALJ's ultimate disability determination, and thus finds them to be not harmless.

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do

---

[7] Although a nurse practitioner is not an "acceptable medical source" as that term is defined in the Social Security Regulations, and therefore may be given less weight than those of acceptable medical sources, evidence from other "medical sources" such as nurse practitioners may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (acceptable medical sources include licensed physicians, not nurse practitioners). 20 C.F.R. § 404.1513(d), § 416.913(d); see also SSR 06-03p, 2006 WL 2329939 *3 (stating that opinions from other medical sources are important, and therefore they should be evaluated on key issues such as impairment severity and functional effects).

REPORT AND RECOMMENDATION - 13

despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the following residual functional capacity:

> **. . . [T]he claimant has the residual functional capacity to perform the full range of sedentary work. Specifically, the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. He can stand and/or walk at least 2 hours in an 8 hour workday and sit for about 6 hours in an eight hour workday. He can push and/or pull without limitation other than as shown for lift/carry.**

Tr. 15. (emphasis in original). In light of the ALJ's errors in evaluating the medical evidence in the record concerning plaintiff's mental impairments and his peripheral neuropathy in his hands, it is not at all clear that the RFC with which the ALJ assessed plaintiff accurately reflects all of his functional limitations. Accordingly, those errors cannot be seen as harmless.

In addition, if a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through either the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157,

REPORT AND RECOMMENDATION - 14

1162 (9th Cir. 2000). In this case, the ALJ found plaintiff to be not disabled at step five through reference to the Grids. See Tr. 18-19.

The Grids, however, "are directly premised on the availability of jobs at the unskilled level," and "'reflect the potential occupational base of *unskilled* jobs for individuals who have severe impairments which limit their exertional capacities. . . .'" Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 526 (1st Cir. 1989) (quoting SSR 85-15, 1985 WL 56857 at *1 (emphasis added by court of appeals)). As long as a non-exertional limitation is "substantially consistent with the performance of the full range of unskilled work," therefore, the Grids retain their "relevance and the need for vocational testimony is obviated." Id.

But as plaintiff points out, defendant himself recognizes that "[m]ost unskilled sedentary jobs require good use of both hand and the fingers," and that "[a]ny *significant* manipulative limitation [in the] ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185 *8 (emphasis in original). Given that the record contains evidence of potentially significant manipulative limitations the ALJ failed to properly consider, the appropriateness of applying the Grids in this case is highly questionable. In addition, the Grids may be used if they "completely and accurately represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, a claimant "must be able to perform the full range of jobs in a given category." Id. (emphasis in the original).

If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[8] Osenbrock, 240 F.3d at 1162; see also Tackett, 180 F.3d at 1102 (non-

---

[8] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 15

exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). Clearly, as just discussed, plaintiff potentially has significant non-exertional limitations in terms of his ability to use his hands. In addition, as noted by the First Circuit in Ortiz:

> The basic mental demands of competitive remunerative unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

890 F.2d at 526 (quoting SSR 85-15, 1985 WL 56857 *4). Again, the findings and opinions of Drs. Reuther, Johnson, Dahl and Breen that the ALJ failed to properly consider, clearly indicate the presence of significant mental functional limitations that if adopted, would seriously impact the ability of plaintiff to perform the full range of unskilled work contemplated by the Grids. See Tr. 237-38, 255, 259-60, 265, 381.[9]

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

---

[9] Defendant argues Dr. Reuther's findings and opinions actually indicate he felt plaintiff's ability to work was not significantly impacted, noting Dr. Reuther found that plaintiff reported "no change in his ability to work due to his depression," that he had "the ability to perform both simple and more detailed tasks," that he "likely . . . would be able to perform work activities on a consistent basis," and that he would unlikely "be impacted too greatly by his depression." Tr. 235, 237. However, Dr. Reuther further found that plaintiff likely would be able to only "accept *some* instructions from supervisors," that "[i]n all likelihood" his "considerable irritability . . . would impair his ability to interact with supervisors, coworkers, and the general public *considerably*," that "[b]etween his isolation and irritability, it [was] unlikely that he would be able to handle *much* interaction on a day-to-day basis," and that "[b]ecause of his difficulty [with] sleeping and fatigue, he might find it difficult to maintain work on a full-time basis and complete a full workweek." Tr. 237-38 (emphasis added). Clearly, the ALJ's residual functional capacity assessment does not account for these significant non-exertional limitations. Defendant similarly selectively takes from Dr. Dahl's evaluation report only those findings that support the ALJ's step two determination, while ignoring the significant mental functional limitations assessed therein that counter it. See ECF #15, p. 10; Tr. 265-66. That plaintiff told Dr. Sztonak that he had only "mild depression since his girlfriend died" as noted by defendant, again is an improper *post hoc* rationale for why the mental functional limitations assessed by Dr. Dahl should not have been adopted that was not offered by the ALJ. Tr. 342; see Connett, 340 F.3d at 874.

REPORT AND RECOMMENDATION - 16

proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and peripheral neuropathy in his hands, his residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, this matter should be remand to defendant for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Court further recommends the Court reverse defendant's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

REPORT AND RECOMMENDATION - 17

72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 8, 2011**, as noted in the caption.

DATED this 17th day of March, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18